UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA INES CARBONELL,<br><br>                                  Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>                                 Defendants. | Case No.: 3:17-CV-64-CAB-BLM<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br>[Doc. Nos. 43, 44] |

On November 7, 2017, the Court dismissed without prejudice the federal claims in Plaintiff Sonia Ines Carbonell's first amended complaint and declined to exercise supplemental jurisdiction over the remaining state law claims. [Doc. No. 40.] On November 28, 2017, Plaintiff filed a second amended complaint ("SAC") purporting to assert three federal claims against Defendants. [Doc. No. 42.] Defendants the County of San Diego (the "County"), and Sara Maltzman (together, the "County Defendants") and TERM a/k/a Treatment and Evaluation Resource Management, Optum Health Holdings, LLC ("Optum"), Radmila West, and LeAnn Skimming (collectively, the "TERM Defendants") moved to dismiss the SAC. [Doc. Nos. 43, 44.] The motions have been fully briefed and the Court deems them suitable for submission without oral argument. For the following reasons, the motions are granted.

# I. Allegations in the Second Amended Complaint ("SAC")

Plaintiff Carbonell is a clinical and cultural psychologist who assisted "indigent, not original Spanish-speaking parents and family in dealing with the juvenile court and other legal systems in San Diego County." [Doc. No. 42 at ¶ 6.] For years, Plaintiff has provided these services primarily through Defendant Optum (formerly known as United Behavioral Health) "with regard to referrals from various departments of the County of San Diego." [*Id.* at ¶ 7.] In April, 2008, Plaintiff entered into a mandated Medi-Cal Provider Agreement with the Department of Health Care Services ("DHCS"). [Doc. No. 42-1.] Under the terms of the contract Plaintiff agreed not to "engage in conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary." [*Id.* at 3.]

Plaintiff alleges that:

> TERM, Optum (named Defendant doctors) and various County of San Diego agencies, including the Health and Human Services Agency, Child Welfare Services, were engaged in a conspiracy to subvert psychologists retained and paid by state and federal funding to change their honest, legitimate opinions based on their training, experience, and credentials in order to a) punish families that would not believe false accusations of sexual abuse by a family member; b) provide a false cover for criminal acts also amounting to civil wrongs by County of San Diego employees, primarily social workers, but including criminally and civilly culpable foster family parents (not County of San Diego employees), every and all to the detriment of the families unfortunate to be devoured and damaged when in their clutches.

[Doc. No. 42 at ¶ 9.]

Further, Plaintiff alleges that:

> TERM has an official policy, called "quality control," that California licensed psychologists must allow TERM, in furtherance of the illegal conspiracy with the County, Optum and Does 1 through 50, to review all psychological reports so that it could compel all licensed therapists to change them, delete them, or alter opinions if County of San Diego social workers demanded it to be done, in order to knowingly mislead juvenile court judges. This caused Plaintiff to be the subject to [sic] racial and nationality discrimination …to be retaliated against for objecting to this misconduct because it violated various statutes …. Defendants' actions were designed to harm Plaintiff and deprive her clients of the care mandated by 42 U.S.C. 1392(b)(5).

[*Id.* at ¶ 10.]

Plaintiff alleges that Child Welfare Services ("CWS"), Optum and TERM recommended she remain off the TERM network and be barred from working with CWS or Child Probation because she refused to alter her professional opinions to conform to arbitrary decisions of Optum Health TERM psychologists, and their unconstitutional quality control policy. [*Id.* at ¶ 14.] Plaintiff claims that Optum terminated her contract and prohibited her from providing additional services to TERM clients because of testimony that she provided in juvenile dependency hearings that Defendants did not like. [*Id.* at ¶ 17.] Further, Plaintiff asserts that her firing was also the result of her refusal to delete information from her case files and treatment plans and because she did not always reinforce the position CWS took. [*Id.* at ¶¶ 19, 20.] The SAC, asserts three claims under federal law: (1) violation of 42 U.S.C. § 1981, et seq; (2) violation of 42 U.S.C. § 1983; and (3) violation of Title VI of the Civil Rights Act of 1964.

The TERM Defendants and the County Defendants now move to dismiss all three of the federal claims for failure to state a claim.

**II. Discussion**

The same standards laid out in the Court's earlier Order are equally applicable here and will not be repeated.

**A. 42 U.S.C. § 1981**

As the Court explained previously, § 1981 "declares that all persons 'shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008)). This statute "encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right.'" *Humphries*, 553 U.S. at 445.

Here, the SAC alleges that because of her heritage and primary language Plaintiff was actively discriminated against in a number of ways. Specifically, Plaintiff alleges that Defendants' discrimination is illustrated by: (1) Defendants filing of false complaints

regarding her ethics, competence and honesty; (2) TERM and County personnel, including Dr. Sara Maltzman, falsely telling others she was fraudulently obtaining money; (3) Defendants "deliberately gamed the ongoing requirements for continuing credentialing by imposing different, more arbitrary and discriminatory standards designed to force her out as a provider;" (4) Defendants targeting her for removal from a panel; (5) Defendants barring her from testifying in support of her clients following her testimony in the Galicia case; and (6) Optum suspending her for 60 days from accepting new clients without notice or due process to appeal. [Doc. No. 42 at 12-22.] Plaintiff also alleges that beginning in October-November 2009, Dr. Skimming and Dr. Maltzman began a practice of "improperly pre-reviewing Plaintiff's reports," that Dr. Maltzman began making unsubstantiated complaints against Plaintiff, and that Plaintiff was restricted from accepting new clients and was no longer a Safe Start provider without due process. [*Id.* at 16-18.]

The SAC goes on to conclude that Defendants were "trying to get rid of Plaintiff, because of her work with Hispanic clients, her ethnic and national heritage, and her attempts to get the Hispanic and Mixtec communities' proper psychological care." [*Id.* at 17, ¶ xii.] Further, the SAC asserts that Plaintiff:

> repeatedly objected to rampant discrimination against her and her clientele group to the Defendants, but was retaliated against by Defendants, her contract with Optum and Medi-Cal was intentionally interfered with for national origin and ethnic based reasons. She was mistreated, retaliated against on a racial basis, which illegally impaired her contractual rights, in violation of 42 U.S.C. 1981, et seq."

[*Id.* at ¶ 34.]

But aside from these conclusory statements, the SAC fails to allege any facts that would plausibly suggest that Defendants took any actions because of Plaintiff's Hispanic origin. *See Jones v. Cmty. Redevelopment Agency of City of L.A.,* 733 F.2d 646, 649 & n.3 (9th Cir. 1984) (holding that bare allegations of discrimination "unsupported by any facts as to how race entered into any decisions" are insufficient to support a §1983 claim).

Plaintiff's assertion that she was required to attend counselor training that was not required of other non-Hispanic psychological providers, [Doc. No. 42 at 21, ¶ xxii], does not save her claim. Nothing in the SAC suggests that Defendants treated Plaintiff differently because she is Hispanic or that her Hispanic origin had anything to do with the termination of her contract. Similar to the FAC, the SAC alleges that Defendants terminated Plaintiff because of actions she took in connection with her work, including testimony Plaintiff provided in dependency hearings. Accordingly, the SAC does not state a § 1981 claim based on discrimination against Plaintiff.

Additionally, the SAC fails, in the same way the FAC did, to allege any facts that suggest a plausible § 1981 retaliation claim. The SAC repeats the allegation of the FAC that Plaintiff "repeatedly objected to rampant discrimination against her and her clientele group [indigenous Indian groups (Mixtec) from Mexico] to the Defendants. . . ." [Doc. No. 10 at ¶ 90; Doc. No. 42 at ¶ 34.] Yet, the SAC does not contain any factual allegations concerning what Plaintiff said and to whom nor any facts that suggest a plausible claim of discrimination against either Plaintiff or her clients. Moreover, the SAC continues to "not include any allegations about how any discrimination against Plaintiff's clients concerned their "contract-related" or section 1981 rights." [Doc. No. 40 at 11.] While Plaintiff references her Medi-Cal provider contract, the contract does not provide Plaintiff's clients with any independent, third-party beneficiary rights and the allegations in the complaint do not support a claim of discrimination against Plaintiff's clients.

In sum, the FAC does not state a claim for either discrimination or retaliation under § 1981. Accordingly, the motions to dismiss are granted as to the § 1981 claim.

**B. 42 U.S.C. § 1983**

The SAC attempts, but fails, to cure the deficiencies of the 42 U.S.C. § 1983 claim. Both motions to dismiss argue that the SAC does not allege a constitutional violation.

As the Court noted in its earlier order, "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443

5

3:17-CV-64-CAB-BLM

U.S. 137, 144 n.3 (1979)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140. In cases involving whether or not a statute creates a right enforceable under § 1983 a court must consider three factors, namely (1) "Congress must have intended that the provision in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States." *Sanchez v. Johnson,* 416 F.3d 1051, 1056-57 (9th Cir. 2005) (quoting *Blessing v. Freestone,* 520 U.S. 329, 34-41(1997) (internal quotation marks omitted). Thus, "a plaintiff seeking redress under § 1983 must assert the violation of an individually enforceable right conferred specifically upon him, not merely a violation of federal law or the denial of a benefit or interest, no matter how unambiguously conferred." *Sanchez,* 416 F.3d at 1062.

The SAC points to the same behaviors and actions of Defendants in support of the §1983 claim as those relied upon in the §1981 claim. [Doc. No. 42 at 27-41. Further, the SAC alleges that Defendants acted in concert and conspired:

> to violate 42 U.S.C. 1396a et seq., including 42 U.S.C. 1396(a)(27) and 42 U.S.C. 1392(b)(5), 42 U.S.C. 1981, et seq., 42 U.S.C. 1983 and Title VI of the Civil Rights Act of 1964, clothed with the authority to regulate and control Plaintiff's legitimate performance of her contract and professional duties, and the families and individuals taken up into the County social services system, as well as indigent Medi-Cal patients, and at all times mentioned herein, acting under the color of State authority, acting also in their individual capacities. Defendant Optum was also acting in its individual capacity, under the color of state authority, in conspiracy with County of San Diego personnel to violate Monell in an ongoing official policy of long undisturbed custom and practice, which was to discriminate against bi-lingual psychological providers on nationality and race grounds, and deliberately deprive Plaintiff's clients of their contractual federal and state rights under 42 U.S.C. 1396a, et seq., including 42 U.S.C. 1396a (a)(27) and 42 U.S.C. 1392 *b)(5).

[*Id.* at ¶ 45.]

Specific to the § 1983 claim, the SAC alleges that as a result of the violation, Plaintiff has suffered damages to her reputation, lost employment opportunities, wages and other benefits along with special damages. [*Id.* at ¶ 47.] It is also alleged that Plaintiff's practice was destroyed, her clientele was denied competent representation, she did not receive payment for past services, her business was affected by her loss of credibility, and her professional license was threatened. [*Id.* at ¶ 48.]

However, while the SAC mentions unconstitutional actions and constitutional violations, nowhere is the Constitutional right that Plaintiff has allegedly been deprived of specifically identified. Rather, Plaintiff makes general references to the Medicaid Act and her Medi-Cal contract without invoking the federal constitution and without making any arguments establishing which interests she might have been deprived of in the first place. *See Guatay Christian Fellowship v. Cnty. of San Diego,* 670 F.3d 957, 986 (9th Cir. 2011) (plaintiff's failure to characterize the liberty interests which it asserted it had been deprived of meant plaintiff had failed to lay the necessary foundation regarding which of defendant's "actions constituted a deprivation for procedural due process purposes, nor an argument establishing which interests it might have been deprived of in the first place."). Additionally, the SAC fails to remedy any of the deficiencies identify by the Court in its prior dismissal order and establish the existence of the requisite liberty or property interest secured by the Constitution.

Moreover, Plaintiff has not demonstrated that the text and structure of the 42 U.S.C. § 1396a et seq. intentionally create an enforceable right remedial under § 1983. *See Sanchez,* 416 F.3d at 1058-62 (concluding "that Congress has not spoken with an unambiguous, clear voice that would put a State on notice that Medicaid recipients or providers are able to compel state action under § 1983.").[1] As to the sections of the

---

[1] Having failed to state a claim for relief under either § 1981 and Title VI, *see* sections II(A) and II(C), the Court finds that these federal laws cannot be the underlying statutes upon which the § 1983 claim is premised.

7

Medicaid Act specifically referenced by Plaintiff, 42 U.S.C. § 1396(a)(27) does not provide a privately-enforceable right[2] under § 1983, and the two other sections of code cited in the SAC, 42 U.S.C. 1392(b)(5) and 42 U.S.C. § 1932(b)(51), do not exist.  Having found that the SAC fails the first prong of the test laid out in *Blessing,* the Court need not consider the other factors.

The absence of allegations identifying which of Plaintiff's federal or Constitutional rights were violated is fatal to Plaintiff's claims under § 1983.  Accordingly, the motions to dismiss are granted as to the § 1983 claim.[3]

**C. Title VI of Civil Rights Act**

As previously explained, Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  This "prohibition extends to discrimination in employment by programs or activities that receive federal funding; however, covered entities can only be sued for employment discrimination 'where a primary objective of the Federal financial assistance [to that program or activity] is to provide employment.'" *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1531 (10th Cir. 1995) (quoting 42 U.S.C. § 2000d-3).

The Court dismissed this claim in the FAC because "the FAC lacks any factual allegations supporting any discrimination by Defendants" and "even if there were such allegations, the Title VI claim fails because there is no allegation that the primary objective

---

[2] 42 U.S.C. 1396(a)(27) provides that a State plan for medical assistance must "provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (b) to furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or intuition for providing services under the State plan, as the State agency or Secretary may from time to time request."
[3] In so finding the Court declines to consider Defendants' other arguments in support of dismissal of the § 1983 claim.

8

of whatever federal financial assistance was received by any of the Defendants was to provide employment." [Doc. No. 40 at 10.] The SAC does not allege any additional facts that would support the existence of discrimination on the part of Defendants or that the primary objective of the Federal financial assistance received by Defendants was to provide employment. Thus, the deficiencies of the FAC have not been remedied. Accordingly, the motions to dismiss are granted as to the Title VI of the Civil Rights Act claim.

### D. Monell Claims Against Entity Defendants

The Court dismissed the *Monell* claims from the FAC because the allegations regarding the quality control program did not "allege how this policy – allowing TERM to review psychologists' reports and compel changes in those reports – results in a violation of *Plaintiff's* constitutional rights, as required for a § 1983 claim, or resulted in discrimination against *Plaintiff* on account of her Hispanic origin, as required for her § 1981 claim." [Doc. No. 40 at 12.] The SAC does not cure these deficiencies and therefore does not state any *Monell* claims. Accordingly, the motions to dismiss the state section 1981 and 1983 claims against TERM, Optum and the County are granted.

### E. Disposition

Plaintiff has had three opportunities to state claims for violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, without success. Accordingly, the motions are **GRANTED** and the SAC is **DISMISSED WITH PREJUDICE**.[4] The Clerk of the Court shall **CLOSE** this case.

It is **SO ORDERED**.

Dated: February 16, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] As a consequence of the dismissal, Defendants' related motions to strike portions of the complaint are **DENIED AS MOOT**. Further, having not considered the document Defendants request the Court take judicial notice of, the pending Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 43-2] is **DENIED AS MOOT**.